Case 15-1110 et al. Healthbridge Management, LLC and 710 Longridge Road Operating Co. to LLC Doing business as Longridge of Stamford Petitioners v. NLRB Mr. Greshengorn for the petitioners and Mr. Cantor for the respondent Mr. Greshengorn for the petitioners and Mr. Cantor for the respondent Good morning, your honors. May it please the court, my name is Brian Greshengorn. I'm appearing on behalf of the petitioners. This case is about an individual by the name of Patrick Atkinson. He's a six-foot, two-inch male, former cook and dietary aide at Longbridge. His employment was terminated because he verbally abused, physically threatened, and his otherwise abhorrent behavior towards his supervisor, Polly Schnell, a five-foot, five-inch supervisor, during a planned walk-in that he led with 15 to 20 other employees. Because Mr. Atkinson's employment was terminated while engaging in concerted activity under the Act, we need to balance the Atlantic Steel factors to determine if Mr. Atkinson lost the protection of the Act. Petitioner argues that the ALJ and subsequently the board erred as a matter of law, primarily in its analysis of the first and third Atlantic Steel factors, the location and the nature of Mr. Atkinson's outbursts. What was the problem with the location? Your honor, the location was in Ms. Schnell's office. It was a planned walk-in at the end of Mr. Atkinson's shift. And the board, recent board law, specifically in Starbucks, has stated that the location of the employee's conduct weighs against the protection of the Act when the employee engages in insubordinate or profane conduct towards a supervisor in front of the other employees. And that's what happened here. He specifically got 15 to 20 individuals, had this planned walk-in. And what he was attempting to do was to undermine Ms. Schnell's authority as a supervisor at the facility. In its decision, the board simply said that since this conduct took place in Ms. Schnell's office and it was away from any patients, that that in and of itself would lend the first problem, the location, to weigh in favor of Mr. Atkinson. We maintain that that's contrary to the board's own precedent. And Daimler Chrysler, an aluminum company, the board reasoned that where the presence of others' employees would reasonably tend to affect the workplace discipline by undermining the authority of the supervisor, the employee's attack on the location of conduct weighs against protection of the Act. But here, you know, everybody agrees this was appropriate, concerted conduct. It was away from the business of the company. It was in the manager's office. So all of that would seem to be okay under the four factors, right? Well, we would maintain that no, Your Honor, under the first. Well, in other words, the place doesn't seem to be the problem. The problem seems to be, you know, was the conduct insubordinate and was it done in order to embarrass or undermine the manager? So it's not the place that you're really looking at, is it? I would agree with you, Your Honor. We would maintain that the first factor should weigh in favor of the petitioner and that one of the issues that the court here should address is we believe as a matter of law that that should weigh in favor of the petitioner. Alternatively, we believe that the court should remand to the board and the board needs to analyze the location of the act because it failed to do that here. The board's only statement on this issue was that this took place in an office away from patients. The case, the board's own case law says that that is not what the board should analyze when looking at this first Atlantic Steel factor. I do agree that the third factor, the nature of the outburst, is really at issue here. Again, the petitioner maintains as a matter of law that factor should weigh in favor of the petitioner. We maintain that the board ignored the undisputed facts that demonstrated that Ms. Schnell was reasonably intimidated by Mr. Atkinson's planned walk-in here. The most recent case that addressed this issue was Starbucks for the board, Your Honor. And specifically here, Ms. Schnell was alone at her office. She was surrounded by 15 to 20 employees unannounced. The employees who testified at the hearing recognized that Ms. Schnell was startled by the employees' gathering. Mr. Atkinson acknowledged on the record that he spoke loudly. He admitted to making this pounding gesture with his hand and that he began the conversation by saying that he had lost confidence in Ms. Schnell as a supervisor. The board goes as far to address the undisputed fact of Mr. Atkinson admitting that he pounded on his hand by simply saying that Mr. Atkinson made a touching of his left palm with his right hand as a gesture. Again, we believe that this is the board not acknowledging what the underlying facts had maintained. Wait, the underlying facts coming from whom? Wasn't the board relying on other testimony? That was, what I mean by that, Your Honor, is that was Mr. Atkinson's own testimony. Was there anybody else confirming that in testimony? Well, that leads me to the other point, Your Honor, which is— I mean, I thought your fight was they didn't—the board refused to allow certain testimony under the hearsay. I mean, that seems to me that's what it comes down to. The board had more than enough, given our normal case law, to support the judgment that they reached. You're trying to whittle into that by saying, but wait, they didn't give due weight to this hearsay. And I agree, Your Honor. I think that the main issue here is that the ALJ did not permit the admissible hearsay of Larry Condon to come in. Mr. Condon is the individual who had a conversation with the administrator, Ms. Schnell, immediately after this walk-in. The board does not acknowledge the admissibility of Mr. Condon's testimony. Instead, the board misapplies the facts and says that Mr. Condon's conversation with Ms. Schnell took place some days— No, no, that was the ALJ. That was correct. I'm sorry. The ALJ, Your Honor. Right. That was not the board's determination, which is what we're looking at. That's correct, Your Honor. They said about an hour afterwards. And that's what we maintain, is it would have been about an hour afterwards. In our case law, you have some problems under the no present impression exception and the excited utterance exception. It was about an hour later. It's kind of hard to fit that within the exceptions. Well, Your Honor, the excited utterance exception, the three prongs, was the event a startling event? Was the statement made under the stress of the excitement caused by the event? And did the statement relate to the events? And we believe that all three of those prongs, when analyzed, would have been met, certainly under the excited utterance. The ALJ doesn't evaluate the excited utterance issue at all, Your Honor. The only issue that the ALJ addresses is the present sense. And in that particular instance, Your Honor, the ALJ misapplies the facts that was before him in that he says it occurred some days later. But the board didn't accept that. It's the board's findings that we review. That's right. And the board took that misapplication of the facts in regards to an admissibility issue and made it a credibility issue. The board says that the ALJ made a credibility issue that Mr. Condon's testimony would not have furthered this prong of the Atlantic Steel Factor test. What we maintain is the ALJ never addressed that issue because he misapplied the facts in regards to the one exception to the hearsay rule, having never addressed the excited utterance issue to the hearsay rule. And for that reason, we would maintain that this needs to be remanded so that the board can actually consider the exception to the hearsay rule, which the ALJ never did. Did the board say anything about it? One is the question is whether that was even raised, but let's assume it was. Yes, Your Honor. And we maintain it was raised. It was in the underlying brief. The board maintains that since it was placed in a footnote, that that's not sufficient notice. We disagree with that. It's not only in a footnote. It was subjunctive. All right? Yes. I mean, where's the footnote? Let's read it. This is important, to me at least. Where is it? Here. Sure. The footnote. Absolutely, Your Honor. The footnote is in the brief in support of exceptions to the ALJ's decision. It's page 21. It's footnote 15, Your Honor. Okay. Let's see. I got it. Arguably, in this case, Schnell's statement to Condon should have been admitted into evidence under either exception, since Condon testified when he spoke to Schnell after the walk-in. He could tell from the tone of her voice that she was still very unnerved by the whole experience. Now, we have said innumerable times that, in cases coming from our district court, that asserting an argument in a footnote and not developing it does not preserve it for appeal. And I don't see why we should depart from that in this case. It really is sandbagging the Board for not addressing the matter which was raised in the most oblique and terse manner. Your Honor, I think what we – Did you see the three elements argued in here? Did you argue those three elements in your brief to the Board? Those elements were not argued. Your Honor, what we maintain is that under consolidated Frightways v. NLRB, a case that's cited by both parties, we maintain that that still was sufficiently specific to preserve the right on appeal. So the cases that the Board cite to, specifically U.F.C.W. Union Local 204 v. NLRB, is a case where the issue was never raised. And here we maintain it was asserted, not developed, and not briefed. And the problem is there's a factorial analysis that the Board would have to undergo if it's properly raised, and none of that analysis was presented to the Board. And it's the Board's decision. You keep saying the ALJ. It's the Board's decision that we look to. And if the Board isn't given an opportunity to address something that you're concerned about, then that's a real problem for us. The only thing that I would add, Your Honor, is that the Board didn't address the issue and made a credibility determination off of the ALJ's incorrect factual assessment, which was the conduct took place some days after when, in fact, I think both parties would agree, that the outermost reach here is that the conduct conveying the Schnell conversation with Mr. Condon could only have been, at maximum, an hour. The Board may have been making a credibility determination. The only credibility determination of consequence, if you didn't raise the excited utterance, would be the credibility determination with the present impression exception. Right. And there's nothing infirm about that. Well, but even in regards to the present exception to the hearsay rule, Your Honor, the Board did not acknowledge the error and then doesn't do anything to evaluate that error. And we maintain that that, in and of itself, is significant because what the ALJ had said was that took place some days later. At maximum, I think both parties maintain that. But they were saying, in effect, it was an hour later, and there were other people who testified in a way that we find credible. We accept the credibility of the other testifying people, and so this claim for an exception based on present impression doesn't work. The only thing that I would say to that, Your Honor, is in the credibility finding, what the Board does is make a credibility finding but does not address the credibility of Mr. Condon because it never had an opportunity to have that testimony heard. If there's any other questions, I see my time is up. Okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Jared Cantor on behalf of the National Labor Relations Board. Your Honors, the Board's decision in this Atlantic Steel case is supported by substantial evidence in the record and is reasonable and for those reasons should be enforced. I will turn into the heat of what seems to be being discussed is the hearsay here. And I agree, and the Board agrees with Judge Edwards and with Judge Ginsburg, that a footnote in your brief in support of exceptions is insufficient to pretend any purposes. If you look at the company's actual exceptions, all they do, which is what the Board looks to and the courts normally look to, there's nothing in there about excited utterance. It is just present sense impression. And as Judge Ginsburg notes, even in their footnote in their brief, it's phrased somewhat hypothetically, arguably, and that simply is not enough to put the Board on notice that it should do a full analysis or even respond to an argument. And I think the Circuit's case law is pretty clear that this is simply insufficient. With regards to the present sense impression, and I think we're going round and round on footnote 8 specifically of the Board's decision, what the Board did there is the best I read it, is that the Board recognized in response to one of the company's exceptions that the ALJ had made that factual error, that Ms. Snell's conversation with Condon was not some days later but was somewhere around 4 o'clock. So we're talking 45 minutes, 40 minutes, an hour later after the walk-in. Well, it's got to be less than an hour. We know that the walk-in occurred after 3 and the actual phrase for describing the phone call is before 4. It was after 3 to before 3. We don't know any more than that. Yes, and Mr. So it's less than an hour, but there's 40 minutes or 50 or 10. Correct, Your Honor. As Condon admitted and he was asked about this, there are no contemporaneous notes from this phone call. He thought that action was more important, so there are no notes to substantiate really that time frame, just his statement that the call was somewhere around 4 or before 4 at 4. So the Board recognized that that was wrong. And then what the Board notes in its footnote with regards to, and this is responding to the company's challenge under the present sense impression, was that this is not a motion to eliminate case. The ALJ did actually hear Condon's full story about what Snell had allegedly told him. And he also heard from nine witnesses who were at the walk-in, including Atkinson. And what the Board recognized in that footnote was that having all of those witnesses testify about this incident, the judge, in constructing his factual summary, his findings of fact recommended to the Board as to what happened, went with that, that he credited their story as to how the walk-in was. And I think it's important to recognize that just because these nine witnesses testified and we have the hearsay testimony on the other side, the ALJ, if he thought that these people were essentially making this all up, that they were not credible, could have simply in his decision said, I have hearsay testimony over here and I have all these witnesses, but simply a large number of witnesses doesn't mean I have to find them credible. I don't buy that this is what actually happened. But that's not what happened here. The ALJ heard from all of these witnesses who provided relatively overlapping, confirming, and mutually corroborative testimony, which the company doesn't dispute any of that. Many of them went uncross-examined, if I recall correctly. And the ALJ credited them when drafting what happened. And the Board, again, in footnote 8, it does recognize that the ALJ made that factual error when dismissing their present sentence impression argument. But what the Board recognizes is that in any event, we have the credited testimony as to what happened and which by implication implicitly discredits what at that point might have been admissible hearsay. The Board does not do that analysis. But that was the Board. The company essentially argues it's circular logic. I think it simply is, it resolves the issue. It tidies it up. So they argue circular, and I would just argue that, in fact, it takes us from the problem they identified to resolution. And maybe that's a circular path, but it does resolve the problems that they raise. Tell me about the Schnell's affidavit. So, Your Honor, the company tried to put in her affidavit. She was under subpoena, and counsel didn't want to ask the Board to enforce it. She had told them she wasn't going to show. Some sort of health reasons, I think. That's what the company's counsel represented as to why she wouldn't show up, health reasons. So they decided not to have the Board enforce the subpoena. And what, again, in footnote 8, the Board talks about, and obviously the company is no longer pressing the affidavit issue in its brief. That has dropped out of the case. Before the Board, it was still being discussed. So the Board in footnote 8 talks about it, and essentially its determination there is kind of agreeing with the administrative law judge that one, for the truth of the matter, asserted in her statement she was not, in fact, unavailable. So the Board rejected that. And then in terms of whether it was being offered to show that her testimony had remained constant over time and that there should be no adverse inference from her failure to testify, the Board, very similar to as I just discussed, essentially came to the same conclusion that based on what the administrative law judge had credited in his findings of fact, that this would just be essentially more of the same. That now we would have another admissible hearsay version of what had happened, and yes, the story was the same, but we have the credited testimony of the witnesses. And so... Was it the ALJ or the Board who said, rather, that even if admitted, it would not change? I believe that... I know the Board says that in footnote 8 of its decision. It's a very long footnote. The operative thing, I think, is the last sentence of footnote. Unnecessary to pass on the judge's hearsay findings with respect to the affidavit because even had the judge considered it for the purposes I just mentioned, consistency of testimony, that would not change the result here based on, again, the credited evidence. Wait, read the sentence. Keep reading. What does the sentence say? Based on what? Based on the credited evidence. This is, if Your Honor wants to look at the footnote, I have the joint appendix. No, that's okay. We can get it. Thank you. And I will also think it's important to point out, as Judge Brown, I believe, mentioned this when the company was talking about the other factors, in its brief, in almost all of the factors, it slips in or it subtly or sometimes explicitly relies on Schnell's version. And I think in our brief, we go through, and usually in footnotes, not to interrupt the argument, but point out where when the company is doing its Atlantic Steel argument or analysis, it's relying on facts that the Board did not find. There's a portion of our brief where we, I think, respond to their arguments where they say even the undisputed evidence, so moving away from Schnell's version of what happened, shows that the Atlantic Steel weighs in favor of loss of protection. And again, as we point out in our brief, it's relying on uncredited testimony, unfound testimony, or mischaracterizing or not quite faithfully representing exactly what's revealed in the record evidence. And so I think that's important to point out, based on the argument that they're again making in front of the court in terms of, you know, barging in unannounced. Knocking on a door and being told to come in, I think, would meet most people's definition of not barging in unannounced. And again, to Judge Brown's point, that this is the point of protected conservative activities, that groups of employees band together and that they can go to their management and raise their concerns, and that there is no requirement that this is necessarily done at the invitation or behest of management at a time and place that management chooses. That would very much chill this very important central Section 7 right. If there are no further questions for the Board, we will rest on our brief and ask the Court to enforce. Thank you, Your Honor. Thank you, Mr. Cantor. I don't think Mr. DeGrosse and Goyn had any time left. We'll give you a minute for rebuttal.  The one thing that I would like to point out, Your Honor, is in regards to Footnote 8, where the Board says, quote, however, in crediting the testimony of Atkinson and the other employees who had firsthand knowledge of the walking, the judge, the ALJ, implicitly discredited Condon's testimony as to what had occurred. The ALJ made no such determination. And based upon that, the Petitioner would maintain, in light of Felix Industries v. LRB, a case authored by Judge Ginsburg, that the analysis of this third factor that the Board undertook was simply to rubber stamp was, in fact, arbitrary and capricious. It should go back to the Board to evaluate the evidence that was actually before it. The ALJ himself says that no one offered any admissible testimony. Well, there was no admissible testimony offered because the ALJ kept out what we maintain is the admissible hearsay testimony. And so if there are no further questions, Your Honors, I would rise. All right. Thank you, Mr. Gershengorn.
judges: Brown, Edwards, Ginsburg